IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WARREN WILLIAMS, # M-40803, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-cv-1289-JPG |
| | ) |
| ARBUCKLE, HORVEY, | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| COUNSELOR RAY, | ) |
| J. STRUBHART, DENSMORE, | ) |
| WARDEN MARC HODGES, | ) |
| and DUNCAN, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at Lawrence Correctional Center ("Lawrence"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. He claims that Defendants have failed to accommodate his need for a special diet due to his severe food allergies, with deliberate indifference to his health and safety. Along with his complaint, Plaintiff has filed a motion for preliminary injunction and/or temporary restraining order ("TRO") (Doc. 4).

According to the complaint, Plaintiff has been diagnosed with allergies to beans and eggs, and his allergies were documented in his prison medical records before he was transferred to Lawrence on December 9, 2013 (Doc. 1, p. 10). Plaintiff informed Defendant Nurse Arbuckle of his food allergies the day he arrived at Lawrence. On December 14, 2013, Plaintiff put in a sick call request so that he could ask a nurse for a special diet. He saw Defendant Arbuckle, but she did nothing and told Plaintiff to write to the chaplain about his dietary requests. Plaintiff informed another unidentified nurse and several correctional officers about his allergies.

On December 27, 2013, Plaintiff wrote an emergency grievance requesting a special diet free of eggs and beans, and asking for a supply of Benadryl in case he were to accidentally ingest those foods (Doc. 1-1, pp. 38-39). He had been losing weight due to his efforts to avoid eating any food with eggs or beans, which are frequently served.

On December 28, 2013, Plaintiff was served a food tray containing what he thought was sloppy joe, so he ate it. Soon he began to sweat, his throat throbbed and swelled up, he began to have hot flashes and problems breathing, and he vomited multiple times (Doc. 1, p. 11). Defendant Nurse Horvey gave him Benadryl to treat his allergic reaction to the beans in the "sloppy joe." Later that evening, Plaintiff again asked Defendant Arbuckle to let him see a doctor to get a special food order. She refused to give him a doctor referral, as she had done continually since December 9, 2013. However, on December 29, Defendant Horvey issued a "therapeutic diet order" for Plaintiff to get a special diet without eggs or beans (Doc. 1, p. 12; Doc. 1-1, p. 13).

Plaintiff continued to be served food trays containing eggs and/or beans, and he spoke to Dr. Coe and LPN Baker (neither is a Defendant) about his allergies. His special diet was approved on January 29, 2014. After that, Plaintiff started getting special trays. However, his food trays still contained eggs or beans from time to time. On April 13, 2014, he got a tray with beans and sent it back. His replacement tray had cornbread, which gave him a minor allergic reaction. Plaintiff continued to get inadequate trays, so he wrote to Defendant Densmore (dietary supervisor) asking him to correct the problem.

On July 4, 2014, while the prison was on lockdown, Plaintiff was given a tray marked "no beans-no eggs." He ate potatoes from the tray and then realized that eggs were hidden under the potatoes. He started vomiting repeatedly and began to sweat, itch, and have trouble breathing

because his throat was throbbing (Doc. 1, p. 14). He was escorted to the Health Care Unit in handcuffs, and was left alone in a room where he lay on the floor and continued to vomit. Defendant Nurse Horvey observed his condition but put off treating him while she continued to talk to the correctional officers. About 35-45 minutes later, Plaintiff tried to get up to see what was taking so long, but fell down and hit his head on the floor. He was finally taken to an examination room, where Defendant Horvey chastised him for eating the eggs and was verbally hostile to him, blaming him for his condition. She examined him and then sent him to a holding cell. Eventually, she gave him an injection of Benadryl. Plaintiff alleges she intentionally delayed his treatment despite her awareness of his life-threatening illness (Doc. 1, p. 16).

Plaintiff filed a grievance over Defendant Densmore's failure to ensure that his meals were free of eggs and beans, and over Defendant Horvey's failure to properly treat him. He also wrote to Densmore to complain about the continuing problem of receiving food to which he was allergic.

In August 2014, Plaintiff was sent to punitive segregation for allegedly assaulting a staff member. While he was there, he continued to get trays that were marked "no eggs-no beans" but still contained those foods. Some days he would not eat because prison staff told him he would not get the right food because he was a staff assaulter. Plaintiff wrote another grievance on August 20, 2014, complaining about Defendant Densmore's continuing disregard of his food allergies which placed him at risk of serious harm. Defendant Densmore has ignored Plaintiff's request slips about his diet and continues to send him trays with eggs and beans.

Again on October 24, 2014, Plaintiff had another allergic reaction due to Defendant Densmore's failure to adhere to Plaintiff's dietary orders. The tray was marked "no eggs-no beans," but in fact contained beans which Plaintiff unknowingly consumed (Doc. 1, p. 20).

Plaintiff's "emergency" grievances were deemed non-emergency by Defendants Hodges and Duncan (the former and current wardens). When the grievances were submitted through the regular channels, they were not answered or were rejected as untimely. Plaintiff blames Defendants Strubhart and Ray for failing to timely address the grievances and failing to resolve the problems with his food.

Finally, Plaintiff asserts that the "Private Corporate Defendant" (by which the Court presumes he means Defendant Wexford Health Sources, Inc.) is responsible for policies, customs, or practices of failing to adequately train or supervise the Lawrence nurses, who denied and delayed his medical treatment as a result (Doc. 1, p. 19).

Plaintiff seeks injunctive relief to prevent Defendant Densmore from violating his dietary orders in the future, or alternatively to be transferred to another prison that will adequately treat his medical needs. He also requests damages.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated the following colorable federal causes of action, which shall receive further review:

**Count 1:** Eighth Amendment deliberate indifference to medical needs claim against Defendant Arbuckle, for refusing to refer Plaintiff to a doctor or take other steps to provide him with a diet free from eggs and beans;

**Count 2:** Eighth Amendment deliberate indifference to medical needs claim against Defendant Horvey, for intentionally delaying treatment and allowing Plaintiff to suffer after he had an allergic reaction on July 4, 2014;

**Count 3:** Eighth Amendment deliberate indifference to medical needs claim against Defendant Densmore, for continuing to include beans and eggs in

Plaintiff's meals after being informed several times that these foods were dangerous to Plaintiff's health.

However, Plaintiff's allegations regarding the mishandling of his grievances by Defendants Ray, Strubhart, Hodges, and Duncan (**Count 4**) shall be dismissed for failure to state a claim upon which relief may be granted. Defendant Wexford Health Sources, Inc., shall also be dismissed from the action.

**<u>Counts 1 & 2 – Deliberate Indifference to Medical Needs by Health Care Providers</u>**

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Plaintiff's food allergies certainly qualify as an "objectively serious" condition that poses a risk of harm to his health. Further factual development is necessary in order to determine whether Defendants Arbuckle and/or Horvey were deliberately indifferent to Plaintiff's medical needs, or were merely negligent or rendered substandard care.

Plaintiff may proceed on his claims against Defendants Arbuckle and Horvey, however, he has failed to state a claim upon which relief may be granted against Defendant Wexford Health Sources, Inc. ("Wexford"). Defendant Wexford is a corporation that employs Defendants Arbuckle and Horvey and provides medical care at the prison, but it cannot be held liable solely on that basis. A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action). Plaintiff's complaint gives lip service to this legal standard, but the factual allegations fail to indicate that a policy or practice of Wexford caused Defendant Arbuckle to refuse Plaintiff's dietary accommodation, or caused Defendant Horvey to delay his medical treatment. Defendant Wexford shall therefore be dismissed from the action without prejudice.

**Count 3 – Deliberate Indifference – Defendant Densmore**

As with the medical providers, the complaint shows that Plaintiff's had a serious medical condition and that he made Defendant Densmore aware of the severe risk to his health if he continued to be fed meals containing beans or eggs. In order to prevail on his deliberate indifference claim, Plaintiff will have to show that Defendant Densmore's conduct as the dietary supervisor was more culpable than mere negligence. The deliberate indifference standard is satisfied if a plaintiff shows that the defendant prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm. *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994). Plaintiff may also proceed with his claim in Count 3.

**<u>Dismissal of Count 4 – Mishandling of Grievances</u>**

In order to be held individually liable in a civil rights action, "a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). Clearly, Defendants Ray, Strubhart, Hodges, and Duncan were not directly involved in preparing Plaintiff's food trays. These Defendants' involvement was limited to the review of Plaintiff's grievances filed to complain about Defendant Densmore and the nurses who failed to address his food-allergy-related needs. The Seventh Circuit instructs that the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). This is true even if, as Plaintiff points out, they could have prevented further problems had they promptly responded to the grievances or resolved them in his favor. Accordingly, Count 4 shall be dismissed, as will Defendants Ray, Strubhart, and Hodges.

For the above reasons, Plaintiff fails to state a constitutional claim upon which relief may be granted against Defendant Duncan (the current warden) for his handling of the emergency grievance(s). However, because Plaintiff is seeking injunctive relief, Defendant Warden Duncan shall remain in the action, in his official capacity only. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out).

**<u>Pending Motion for Preliminary Injunction and/or Temporary Restraining Order (Doc. 4)</u>**

A temporary restraining order ("TRO") is an order issued without notice to the party to be enjoined that may last no more than fourteen days. FED. R. CIV. P. 65(b)(2). A TRO may issue without notice only if "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." FED. R. CIV. P. 65(b)(1)(A). Such injunctive relief is also warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994).

In contrast, a preliminary injunction is issued only after the adverse party is given notice and an opportunity to oppose the motion. FED. R. CIV. P. 65(a)(1). In order to obtain preliminary injunctive relief, Plaintiff must demonstrate that: (1) his underlying case has some likelihood of success on the merits; (2) no adequate remedy at law exists, and; (3) Plaintiff will suffer irreparable harm without the injunction. *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007). If those three factors are shown, the district court must then balance the harm to each party and to the public interest from granting or denying the injunction. *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013); *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999).

Upon preliminary review, the Court finds that Plaintiff's motion warrants prompt consideration. Accordingly, Plaintiff's request for a preliminary injunction/TRO (Doc. 4) shall be **REFERRED** pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c) to a United States Magistrate Judge, who shall resolve the request as soon as practicable and issue a report and recommendation. If it becomes apparent that further action is necessary, the undersigned Judge should be notified immediately. Any motions filed after the date of this Order that relate to this request for injunctive relief or seek leave to amend the complaint are also hereby **REFERRED**

to the United States Magistrate Judge.

**Other Pending Motions**

The motion for leave to proceed *in forma pauperis* ("IFP") (Doc. 2) shall be addressed in a separate order by the undersigned Judge.

Plaintiff's motion for recruitment of counsel (Doc. 3) shall also be referred to the United States Magistrate Judge for further consideration.

**Disposition**

**COUNT 4** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. Defendant **WEXFORD HEALTH SOURCES, INC.** is **DISMISSED** from this action without prejudice. Defendants **RAY, STRUBHART,** and **HODGES** are **DISMISSED** from this action with prejudice.

The Clerk of Court is directed to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants **ARBUCKLE, HORVEY, DENSMORE,** and **DUNCAN.** The Clerk shall issue the completed summonses, and prepare a service packet for each Defendant consisting of: the completed summons, the completed form USM-285, a copy of the complaint (Doc. 1), and this memorandum and order. The Clerk shall deliver the service packets for the Defendants to the United States Marshal Service for personal service on each Defendant.

Pursuant to Federal Rule of Civil Procedure 4, **within 14 days of the date of this Order (on or before December 8, 2014),** the United States Marshals Service **SHALL personally serve** upon Defendants **ARBUCKLE, HORVEY, DENSMORE,** and **DUNCAN** the service packets containing the summons, form USM-285, a copy of the complaint (Doc. 1), and this memorandum and order. All costs of service shall be advanced by the United States, and the

Clerk shall provide all necessary materials and copies to the United States Marshals Service. The Court will not require Defendants to pay the full costs of formal service, as the Court is ordering personal service to expedite the resolution of Plaintiff's motion for preliminary injunctive relief.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, including the resolution of Plaintiff's request for a preliminary injunction (Doc. 4) as soon as practicable, to include a report and recommendation.  If it becomes apparent that further action is necessary, the undersigned Judge should be notified immediately.  The pending motion for recruitment of counsel (Doc. 3) is also referred to the United States Magistrate Judge for disposition.

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, even if his application

to proceed *in forma pauperis* is granted.  See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  See FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 24, 2014**

*s/J. Phil Gilbert*
United States District Judge